## BELLIS v. RADABAUGH et al.

No. 18629.  Opinion Filed Sept. 25, 1928.

Rehearing Denied Dec. 18, 1928.

S. J. Berton, for plaintiff in error.

Brown Moore and Guy L. Horton, for defendants in error.

DIFFENDAFFER, C. The parties appear as in the trial court. This action was commenced in the district court of Payne county by plaintiff to recover the sum of $350 on a promissory note, and to foreclose a mortgage executed by defendants to secure same.

The petition is in the usual form. The note was dated November 18, 1922, bearing eight per cent. interest from date; and, among other provisions, has the following clause:

"Should suit be commenced for the collection of this note, a reasonable amount shall be allowed as collection, attorney's fees to be taxed as costs whether it goes to judgment or not. * * *"

The mortgage is in the usual form, and the clause therein providing for attorneys fee is:

"And as often as any proceedings shall be taken to foreclose same, as herein provided, the mortgagor will pay to the said plaintiff $35 as attorney's or solicitor's fees therefor, in addition to all other statutory fees."

The defendants filed a verified answer denying generally all the allegations of the petition except such as were specifically admitted. The execution and delivery of the note and mortgage is admitted. For further defense, defendants allege, in substance, that on or about the date of the execution of the note, plaintiff advanced defendants the sum of $350 for the purpose of financing a contest which defendants were prosecuting in the U. S. Land Office involving a homestead entry on certain public lands; that a contest had been begun in 1914, and was lost by defendants; that defendants were unable to employ counsel and bear the expense of a "re-contest"; that plaintiff agreed to finance the contest, and did advance to defendants the $350 for such purpose; that, in consideration thereof, defendants agreed with plaintiff that, in the event they were successful in said contest, defendants would convey to plaintiff one-half of the land involved; that this agreement was in writing, made out on or about the date of the note; that each party had a copy of the contract, but defendants' copy had been lost or destroyed, and defendants could not attach a copy thereof; that said contract provided, in substance, that plaintiff agreed to advance defendant said sum of $350, to finance said contest, and C. C. Radabaugh, one of defendants, agreed that in the event the contest was successful, he would convey to plaintiff one-half of the land involved in the contest; that the note and mortgage were only given to guarantee plaintiff that Radabaugh would convey to him the one-half interest in the land involved in the contest in the event that the contest was successful, and that it was specifically understood, if defendant C. C. Radabaugh was unsuccessful in said contest, he would not be required to repay the $350 so advanced. It was not al-

leged that the contract contained the latter provision. Defendants also alleged that the note and mortgage were obtained by fraud by plaintiff orally representing to them that he would not require repayment of the $350 if the contest was unsuccessful; that these representations were made for the purpose of misleading and deceiving defendants, and they, believing said representations and relying thereon, executed the note and mortgage believing that they would not be required to pay the note if unsuccessful in the contest, and believing they were only executing the same for the purpose of guaranteeing and giving additional security that they would convey one-half of the land to plaintiff if successful in the contest; that the contest failed and defendants were not liable on the note and mortgage.

Plaintiff replied by verified general denial, and specifically denied that any contract, oral or written, such as pleaded by defendants, was ever made.

Plaintiff thereafter, and before trial, filed a motion for judgment in his favor on the pleadings, which motion was overruled, and plaintiff saved proper exceptions. The issues were tried to a jury on January 13, 1927, resulting in a verdict in favor of plaintiff fixing the amount of his recovery at the sum of $350. Defendants in proper time filed their motion for new trial setting out as ground therefor:

"That the verdict of the jury is contrary to law.

"That the verdict is contrary to the evidence.

"That the verdict is contrary to the instructions of the court containing the law in the case.

"That the verdict of the jury is not supported by the law and the evidence.

"That the court erred in permitting the plaintiff to introduce evidence that was incompetent, irrelevant and immaterial over the objection of the defendant.

"That the court erred in refusing to permit the defendants to introduce evidence that was competent and material.

"That the court erred in giving to the jury instructions that were erroneous and contrary to law, which instructions were excepted to by the defendants."

On February 5, 1927, defendants filed an amended motion for new trial, in which they set out the same grounds contained in the original motion, and in addition:

"Newly discovered evidence material for the defendants, which new evidence has been discovered by the defendants since this action was tried, and which evidence the defendants could not with reasonable diligence have discovered and produced at the trial, to-wit: The evidence of one W. M. Taylor, who will testify that since the note sued upon in this case became due, the plaintiff, John H. Bellis, placed said note in the hands of the said W. M. Taylor, for collection. That the defendants came to the office of said W. M. Taylor, and had in their possession a written contract, signed by the defendants and the plaintiff, John H. Bellis, in which it was agreed that if the defendant C. C. Radabaugh won the contest and secured the title to a certain tract of land, that Radabaugh would deed an undivided one-half interest in and to said land to the plaintiff, John H. Bellis, and that said John H. Bellis would return the note and mortgage to the said Radabaugh, as more fully appears from the affidavit of the said W. M. Taylor attached hereto, marked 'Exhibit A,' and hereby made a part of this motion for new trial. That the defendants did not know that the said W. M. Taylor knew said facts, and that he was willing to give such testimony until they discovered the same on Saturday, the 15th day of January, 1927, when they learned for the first time that said W. M. Taylor could give such testimony."

Neither the original motion nor the amended motion was verified, but the amended motion had attached thereto the affidavit of W. M. Taylor, which, omitting the caption, is:

"W. M. Taylor, of lawful age, being first duly sworn according to law, says on oath: That he is acquainted with John H. Bellis and C. C. Radabaugh. That on or about the 7th day of September, 1925, or shortly prior thereto, C. C. Radabaugh left on his desk in his law office in the city of Cushing, Okla., a certain contract between the said C. C. Radabaugh and John H. Bellis. That, in substance, said contract provided that in the event the said C. C. Radabaugh won a contest to a certain tract of land commonly known as the 'Ab Mullins farm' near Ripley, he would deed an undivided one-half interest in the land to the said John H. Bellis.

"That, on or about the 7th day of September, 1925, this affiant mailed the contract between the said John H. Bellis and the said C. C. Radabaugh to the said C. C. Radabaugh at Ripley, Okla. W. M. Taylor.

"Subscribed and sworn to before me this 18 day of Feb. 1927. Brown Moore, Notary Public.

"(Seal) My commission expires Aug. 4, 1929."

On the same date, plaintiff filed what he terms a "motion for additional judgment,"

in which he asked the court to enter judgment for the $350, as per the verdict, and, notwithstanding the verdict, for interest at 8 per cent. from the date of the note, and the further sum of $35 attorney's fees, and declaring the judgment a lien on the premises described in the mortgage, and for foreclosure thereof, etc.

On February 19, 1927, the court sustained the motion of defendants for a new trial, and from this order the defendants bring this appeal. The defendants, having admitted the execution of the note and mortgage, assumed the burden under the defense pleaded.

The property covered by the mortgage is lots 8 to 12, inclusive, in block 15, town of Ripley, the home and homestead of defendants.

C. C. Radabaugh testified, in substance: That he signed the note and mortgage; received $350 from plaintiff; the purpose for which he received the money was to provide a contest against one A. B. Mullins in the U, S. Land Office; that he and plaintiff had a written contract signed by each of them, a copy of which each retained; that he had lost and was unable to find his copy; the substance of the contract was defendant was to deed to plaintiff one-half interest in the land involved in the contest in the event he was successful; that the note and mortgage were given as additional security for fulfillment of the contract, and when asked as to the provision of the contract as to what was to be done in the event he was unsuccessful in the contest, he testified:

"Q. Do you remember whether or not the contract contained the provision that if you were unsuccessful in the contest between you and Mullins, that you would not be required to fulfill the contract? A. No, sir, that was just orally between Mr. Bellis and myself."

On cross-examination, he testified:

"Q. Did that contract say that he was to give you $350? A. I think so. Q. It mentioned he was to give you $350? A. Yes, sir. Q. If you was successful in the contest? A. I was to deed it to him. Q. And if you was unsuccessful, what did the contract say? A. Not a word. * * * Q. When was the note and mortgage made? A. I think they were made the same time. I took the mortgage, and then Mr. Bellis sent me the note. I signed it and sent it back to him. Q. Didn't you take the note and mortgage at the same time? A. No, sir. Q. Who made out the mortgage? A. I thing his stenographer made it out. Q. She made out the note? A. Yes, sir. Q. Gave them to you,

and then what did you do with them? A. Signed them and sent them back. Q. They gave them to you at Cushing? A. Yes, sir. Q. You say it was agreed orally between you that you was to give him this note and mortgage? A. It was agreed orally that if I wasn't successful that I wasn't out anything. He was just putting up $350 against that farm. * * *"

As to how the money was used, he testified:

"Q. You say you took $200 of this money to pay Mr. Good? A. Yes, sir. Q. And that was something that was already due Mr. Good on the previous contest? A. Yes, sir. Q. And that was for improvements on that place? A. Yes, sir, that is what the agreement was between me and Mr. Good. Q. And you were to make improvements on this place? A. I went to Mr. Good—— Q. He had financed you money to make improvements on the place? A. Yes sir."

The evidence of defendant Dettie A. Radabaugh was, in substance, the same as that of C. C. Radabaugh.

At the close of defendants' evidence, plaintiff demurred thereto, which demurrer was overruled, and plaintiff testified:

"Mr. Radabaugh came to my office and first wanted to sell me a half interest in a piece of land lying along the river bed that he had filed on. And in this conversation he said he had lost his contest and he wanted to recontest it. And I told him he had nothing to sell. That I wasn't interested at all. He said he had to have this money to pay his lawyer $100, and $200 to Ed. Good. That he would give me a mortgage on his place if I would loan him $350. I refused at first, but after he stayed there about three-quarters of an hour, I finally consented to loan him $350. I made the checks in two checks. One for $200 for Ed. Good, the other for $150, which shows his indorsement. I presume he paid his lawyer $100, and I don't know what he done with the other $50. It was specifically understood that I would have no interest in this contest at all."

And, in substance, that though the note bore interest payable semi-annually, he had never asked defendants to pay any interest until after the note matured; had demanded payment after the note matured, and on one occasion had offered to extend the note, if defendants would pay the interest.

Defendants had testified that the alleged contract was written by Miss Groom, who was a stenographer in the employ of plaintiff. Miss Groom was a witness for plaintiff, and identified the note and mort-

gage as having been prepared by her, and specifically denied that she had ever prepared or written any contract such as was testified to by defendants.

At the close of all the evidence, plaintiff moved the court to direct a verdict in favor of plaintiff for the full amount sued for. This motion was overruled, and plaintiff then moved the court to direct a verdict in favor of plaintiff for $200. This motion was overruled.

There are six assignments of error. The fifth is, that the court erred in sustaining the amended motion of defendants for a new trial. The order of the trial court sustaining the motion of defendants for a new trial is general, and does not state the grounds upon which the new trial was granted, but from an examination of the entire record it would appear that it could not properly have been granted upon any other ground in the motion than that the additional ground set up in the amended motion was newly discovered evidence.

There were but three objections of plaintiff to questions propounded by defendants' counsel sustained by the trial court. No objections made by defendant to questions of plaintiff's counsel were overruled. The first question by defendants' counsel to which an objection was sustained was propounded to defendant C. C. Radabaugh:

"Q. What was the cause, Mr. Radabaugh, for your signing the note and mortgage?"

The court sustained the objection of plaintiff's counsel as calling for a conclusion of the witness.

The second was:

"Q. What additional security, if any, did you give Mr. Bellis that you would fulfill the contract?"

Objected to as not the proper way to show it, and incompetent and irrelevant. Objection was sustained. The witness was then permitted, without objection, to testify that the note and mortgage was given as additional security for the fulfillment of the contract, so that the error, if any, in sustaining the objection was thereby cured.

The third objection was to a question and answer concerning the oral negotiations leading up to the execution of the alleged contract, and was properly sustained. The trial court submitted the case to the jury solely upon the question as to whether or not the alleged contract was executed by the parties. No exceptions were saved by either party to the instructions. It would thus appear that there were no grounds whatever for a new trial for errors occurring at the trial. The question then arises, Did the trial court abuse its discretion in granting the new trial on the grounds of newly discovered evidence? As heretofore pointed out, neither the motion nor the amended motion for new trial was verified by the applicant or any one for him. There is some contention that defendants had no right, more than three days after the verdict, to amend their motion for a new trial by adding thereto the ground of newly discovered evidence. We think this contention is without merit. Since defendant was not limited to three days within which to move for a new trial on the grounds of newly discovered evidence, we see no reason why he should not be permitted to make the application by way of amendment to a motion already filed. Bryan v. Ramsey, 115 Okla. 133, 242 Pac. 222, was a case wherein the authority to grant a new trial on an unverified motion where newly discovered evidence was the ground relied upon, the identical question here raised, was involved. This court held:

"Under section 575, Comp. St. 1921, the motion for new trial on the ground of newly discovered evidence must be verified by affidavit showing the truth of the same. In this case such motion is not verified. It is true that affidavit of E. M. Rice, as to what his testimony would be, is attached to the motion, but the motion itself, in which the defendants set out their claim of reasonable diligence and other grounds, is not verified. It is necessary that the motion itself should be verified."

And in the body of the opinion, the court said:

"Then, finding as we do that the motion for new trial itself, in this cause, was not verified by the applicant, we are of the opinion that the court committed reversible error in not striking the same as requested in defendant's motion, and we are clearly of the opinion that the solemn verdict of the jury arrived at under the circumstances, as presented by this record, should not be lightly set aside, but should be sustained, and the rights of the successful parties be protected unless the same may be set aside under the law and under the forms of law as prescribed by our statute, and as interpreted by this court in the opinions cited and quoted from in this opinion."

In Eskridge v. Taylor, 75 Okla. 139, 182 Pac. 516, the trial court was upheld in overruling a motion for a new trial on the grounds of newly discovered evidence where the motion was not verified. In that case,

the affidavits of the two witnesses were not attached, but at the hearing on the motion they were called as witnesses, sworn and examined, and their evidence was incorporated in the record. It was held this was not a compliance with the statute. To the same effect is Dodson & Williams v. Parsons, 62 Okla. 298, 162 Pac. 1090. Plaintiff also complains that the trial court erred in refusing to direct a verdict for plaintiff for the full amount sued for. In Higgins v. Butler, 10 Okla. 345, 62 Okla. 810, the court held a contract to convey an interest in land involved in a contest somewhat similar to the one claimed by defendants, was illegal and void, and could not be enforced, but held that the money advanced for legitimate purposes under the contract could be recovered, and it was there said:

"* * * But, notwithstanding the fact that this written contract could not be enforced according to its terms, or could not be legally held to be a mortgage, if the one party advanced money to the other, under said contract, and such advancement was made for a legitimate and legal purpose, and the same was accepted and used by the other party for a proper and lawful purpose, a party might maintain an action for money had and received, notwithstanding the fact that the original contract was illegal and void. Now, in the case at bar, the money advanced by the plaintiff in the court below to the defendant, with the exception of the item of $75 which the proof shows was used for the purpose of preventing an indictment for perjury against the defendant in the court below, this money having been advanced for an illegal purpose, was entirely eliminated from the consideration of the jury by the trial court by an instruction: the balance of the money was all used for legitimate and legal purposes, to wit, the building of a house on the homestead, the fencing of the land, paying of fees for proving up on the claim, paying the expenses of witnesses in attending the trial of the contest over the homestead, and the services rendered by the plaintiff in the court below, if the jury believed they were rendered by him, for the purpose of assisting the defendant in the court below, in maintaining his claim to this homestead, and in looking up evidence and examining witnesses for this purpose, was a proper and legitimate service: and if the jury believed that such services were rendered at the request of the defendant, then they were such services as the plaintiff in the court below would have a right to recover for. Now, it seems to us that this question of the right to recover for the money advanced for these purposes and services rendered would exist independent of the question of whether this contract in question was legal or illegal, or whether such a contract could be by law enforced according to its terms or not."

The undisputed evidence both of plaintiff and defendant in the instant case is that the money advanced by plaintiff was used for a lawful and legitimate purpose, $200 thereof went to pay off a prior mortgage, $100 attorney's fee, and $50 costs. The $200 had been loaned to defendants by one Good, and used by defendant, according to his own testimony, for improvements on the contested land; that is, to set out a pecan orchard. This was a legitimate purpose, even as to Good, though he had a contract with defendants like that claimed between plaintiff and defendant. This was as legitimate as looking up evidence and examining witnesses. It must be held in mind that this is not an action to enforce the alleged contract, which, if executed, was illegal and void, but is an action to recover money advanced for a legitimate purpose, even if advanced under a contract such as was claimed by defendant. Under authority of Higgins v. Butler, supra, the court should have directed a verdict for plaintiff, including interest, and the $35 attorney's fee should be taxed as costs, as provided in the note and mortgage.

We think the trial court erred in sustaining the motion for new trial and in refusing to direct a verdict for plaintiff.

The judgment and orders granting a new trial should be, and are hereby, reversed, with instructions to set the same aside, and render judgment for plaintiff in accordance herewith.

BENNETT, HERR, HALL, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.